Good morning, Cliff Gardner appearing for Petitioner, Walter Stevens. I've never been in a standing-room-only courtroom before, Your Honor. Good. It's a great pleasure. I'm going to begin with quite an argument in the store. I must. I wish they were here to see me, Your Honor. I suspect they're not. I'm going to focus my remarks. Actually, I'd like to reserve two minutes for rebuttal. I understand I'll keep track of my time. I'm going to focus my remarks today on the ineffective assistance of counsel claim that's presented in the briefs, and particularly trial counsel's failure to introduce evidence from the neighbors, Petitioner's neighbors, that in fact they had told Petitioner that Mr. Hall owned guns. And perhaps because it's such an agreeable day or we have a standing-room-only crowd, rather than start on any of the many points of disagreement I have with the State or the State has with me, I thought I'd start with three points of agreement because it helps to put the disagreement in context. And the first point of agreement regards Petitioner's testimony at trial. Petitioner testified that the neighbors had told him Mr. Hall owned guns and used them. In fact, one neighbor had said that he should be careful. And he testified at trial that he initiated the assault because he thought Mr. Hall had a gun and was aiming it at him. And finally, he testified that in the subsequent fight, he inflicted a fatal wound, a fatal wound that was in fear of his life. Was Hall, the victim, alive when your client understood that what he had in his hand was not a weapon but a thermos? Yes, he was. And after that, your client beat him to death with a gun? Yes, he hit him on the top of the head several times with a gun, and those were the fatal wounds. And then burned his body? Indeed, that's the State's, primarily the State's position in this case. What in the world would Hall's gun ownership have to do with that sequence of facts? It has to do with it in three contexts. And let me answer the question first by talking about what the evidence was. The Petitioner testified that the neighbors told him Hall had guns. Trial counsel did not present evidence that, in fact, would have corroborated that. And remember, the trial court heard Petitioner's testimony and instructed the jury that they could acquit him of murder and convict of manslaughter on what's called imperfect self-defense if they found it credible. Now, the trial court heard that it wasn't the fatal gunshot. On what credible? If they found Petitioner's testimony that, in fact, when he inflicted the fatal wound, which wasn't the gunshot wound, as Your Honor observes, which was the blow with the butt of the gun, if they found that when he inflicted that wound, he honestly, albeit unreasonably, believed he was in fear of his life. So the trial court felt there was sufficient evidence to go to the jury on that. The question is, and this is Respondent's position as framed in Your Honor's question, Respondent says, well, good Lord, the fatal wound wasn't a gunshot wound. So what prejudice could there be from the failure to introduce evidence which confirmed his state of mind at the time of the gunshot wound? And that brings us to the point of disagreement. And here is where I think it's relevant. The trial court, in addition to instructing on perfect and imperfect self-defense, instructed on what's known as the original aggressor doctrine. And in California, that doctrine provides that you cannot, as a defendant, rely on either perfect or So the question is, since all parties agree the assault was initiated by my client when he fired, was that wrongful? The evidence which trial counsel failed to present, the evidence that the neighbors could have confirmed, that they told him Hall had guns and that Hall was dangerous, went directly to the original aggressor doctrine. Absent that evidence, there is no way the jury could even have considered the imperfect self-defense that the trial court found there was sufficient evidence to go to the jury on. So it's relevant for that, because of the original aggressor doctrine. And I have to say, and I guess I take the fault on this, I've been notoriously unsuccessful in getting the state to address the relevance of this evidence to the original aggressor doctrine. Well, assuming it's relevant, you still have the problem that he realizes that, in fact, that the gun is, what he thought was a gun is a thermos. We get to that point, and I think we get back to Judge Hawkins' question. Then, he proceeds to beat him to death. So what's the defense at that point? Well, the defense at that point is, it's certainly, as Your Honor frames the question, it was unreasonable for him to take that action. The trial court felt there was sufficient evidence to go to the jury to see if it was an honest belief, because remember, Petitioner's testimony was that Hall hit him with a thermos. He thought he was in fear of his life. He struck, he then inflicted the fatal wound. The trial court heard that testimony and said, it can go to the jury. The jury can look at this set of facts and find imperfect self-defense. Let me interrupt for a second. What relevance does the gun have at that point? The gun has at that point, well, first of all, it's the gatekeeper function. The jury cannot consider the defense that the judge has said there's sufficient evidence of under the original aggressor doctrine. So it has relevance to a gatekeeper function. It's an unusual case. But at that point, the judge already said they could consider it. I'm sorry? At that point, the judge already said they could consider it. Yes, but he also instructed them as part and parcel of the imperfect self-defense instruction is, yes, you can consider if it's honest and unreasonable, you can mitigate to manslaughter if, and only if, you find that initial assault was not wrongful. So the original aggressor doctrine is part and parcel of the imperfect self-defense. This evidence, in a way, is directly relevant to imperfect self-defense, even after the gunshot wound, precisely because original aggressor doctrine is tied up with the defense. Now, in addition to the original aggressor doctrine, there's another aspect of this case that I don't think has received sufficient attention. And that is this. The prosecutor recognized that even under this state of facts, and Your Honors have accurately stated it, the gunshot wound wasn't the fatal wound. It was the subsequent blow. The prosecutor turned to manslaughter in his argument, and he told the manslaughter, remember, is that you believe what he's telling you, that he was actually in fear, which I say to you is not accurate. So the prosecutor, I think to his credit, her credit, recognized that for the jury to accept imperfect self-defense, even under these facts, they had to believe defendant. And then the prosecutor, on five separate occasions in his closing, in her closing argument, told the jury, you can't believe him, and you know why? Because he didn't call any neighbors to confirm his testimony. Where are the neighbors? Again and again and again, he asked the jury, where are the neighbors? Well, we know where the neighbors were. They were sitting in court, they could have been called, and counsel didn't do it. So really, it's the combination of those two elements. It's the original aggressor doctrine and the fact that the prosecutor not only recognized that petitioner's credibility was key to his case, petitioner's case, but faulted that credibility precisely because the neighbors hadn't been called. And there's one other aspect that I think renders it prejudicial. And I understand, I understand the state's argument, I understand the court's questions about the separation here and the time, this wasn't the gunshot wound. The original aggressor doctrine, the key nature of the credibility, but there's one other aspect that I don't think has received sufficient attention. And that is, if the jury had convicted the defendant of first-degree murder, I wouldn't be here arguing. I wouldn't be here arguing this. But let's look at what the jury did. After 17 hours of deliberation, they unanimously acquit of first-degree murder. Now, what does that mean? That means that the killing was not planned and it wasn't premeditated, which was, of course, the state's theory. The state's theory was this arose out of the border dispute and burned the body afterwards. All this was evidence of premeditation and planning. And the jury said, no, it isn't. This was unplanned, unpremeditated, which means it was a spontaneous event. After all, it wasn't planned or premeditated. And that is precisely the theory on which imperfect self-defense was based. The jury was coming very close, as close as they could without this evidence, to accepting the imperfect self-defense theory. And then, of course, we have the jury's question. And let's put it in context in the few seconds I have, because I do want to reserve some time for rebuttal. The prosecutor argues, the petitioner testifies, I thought he had a gun because neighbors told me he had a gun. The prosecutor tells them four or five times, you can't believe him because he didn't have a gun. Where are the neighbors? The neighbors didn't come to testify. And what does the jury ask for during that 17 hours of deliberation before unanimously rejecting the state's theory? They ask for the testimony of the neighbors about the gun. And they are accurately told there was none. So the suggestion that this kind of testimony wouldn't have been important to the jury in this case with the original aggressor doctrine, with the credibility of defendant, with the prosecutor's argument, I think the court needs to reject. I will reserve the minute and a half I have left for rebuttal here. Thanks for your time. Thank you. We'll hear from the warden at this time. Counsel. Good morning. May it please the court. I'm Deputy Attorney General William Cumulus. I represent Appellee of the Warden. The essential fact in this case, as I believe the Court has pointed out, is that Mr. Hall, Appellant realized at the time he began beating Mr. Hall to death that Mr. Hall was not armed. And this shows that the problem with Appellant's initial aggressor argument is that there is no plausible case that he can make that he had a reasonable fear at the time he beat Mr. Hall to death that his life was in danger. Mr. Hall was an old man. He was retiring that very day. Before Appellant had called out to him, Mr. Hall was walking away from Appellant. Appellant, on the other hand, was a 29-year-old, 6'3", 195-pound Coast Guard veteran. He was an expert marksman. He was armed with a very powerful handgun. He had just sprinted towards Mr. Hall after shooting at him. And he claims that he was afraid because Mr. Hall threw a thermos at him, an act which did not even leave any visible mark, which goes to show that in addition to Mr. Hall being old, he was feeble. If that's the best he can do is to throw his thermos at Appellant, hit him in the nose, and not even leave a mark, which was testified to by the nurse who attended to Mr. Hall, to Appellant, when he was at the jail. What's your response to Ms. Gardner's argument that the gun ownership relates to initial aggressor? The initial aggressor theory that he's proposing assumes That's not a theory. The jury was instructed on it, right? Yes. But it assumes that he has a self-defense theory that he can present at the time he actually killed Mr. Hall. Now, as far as relating back, had the gun ownership tended to prove that or corroborate Appellant's claim that he believed he was in danger, there would be some relevance there. But we maintain that the fact that his neighbors had, two years prior, seen a handgun in his drawer, and that several years before that, he had shot at a snake, were not facts that were likely to induce any sort of fear in Mr. Hall. Stevens testified, right? Yes. At his trial? Yes. And said that he was aware that Hall had guns? He did testify to that. And when he saw him on the fateful day, Hall had something in his hand, and Stevens thought this was a weapon? Yes, he did. Now, I should point out that Wooden Hall's history of use of firearms and ownership of firearms have been relevant to that point, to corroborate the defendant's claim that, in the time that this confrontation turned violent, or started to turn violent, Stevens thought Hall was armed. Well, first, this is not something that Mr. — that Appellant mentioned on his direct examination. Now, the fact that their neighbors – What difference does that make? The importance that it had in his mind and whether or not it was something that he was considering at the time. Okay. Anybody who's tried a case has had witnesses who didn't remember something. Honestly, the nerves of the day, that sort of thing, it's not unusual at all that when you get up on cross-examination, you have to rehabilitate a witness a little bit. But in this respect, it doesn't make much difference whether he came out on direct or cross. And Stevens' testimony at his trial, in his own defense, was at the moment the confrontation started, he thought Hall was armed. Yes. And part of his mindset in this regard was he knew Hall owned guns and had used them in the past, albeit lawfully. And no one in the prosecutor didn't challenge that claim that he made. There was no assertion by the prosecutor throughout the case and throughout his argument that Appellant did not, in fact, believe that. So what would we make of the closing argument in which they say, where are the neighbors? What would be the point of that unless you're trying to cast doubt? He was addressing other aspects of the neighbors. Appellant has raised this very issue before the State court and before the district court. And both courts made factual findings that the prosecutor was not making any assertions concerning what the neighbors had told Appellant about the guns. In fact, the prosecutor was referring to whether – well, at Excerpt of Record 39, the court – the prosecutor actually argued that Appellant would have mentioned the gun ownership on direct if it was something he had thought about. That was not directed towards what he was told by the neighbors, but rather what was going through Appellant's mind at Excerpt of Record 40 through 41. But it's his only defense. I mean, let's cut through the smoke. It's his only defense, imperfect self-defense. That's the only thing he can possibly win on, don't you agree? That's his theory. Yes. And cooperation would seem to be an important part of that theory, whether it is to get him through the gate or otherwise. And then you have a question from the jurors about the very evidence that could have been put on. So why isn't that enough to show prejudice?  Well, I think it's important to point out that in the case of Appellant, he had a reasonable jury that he had the actual fear after he saw and realized and knew that he did not possess a gun. So what do you think the jury was deliberating about for all that time? Whether to convict him of first-degree murder. He was still subject to the first-degree murder charge. The facts in this case were very egregious and pointed towards a premeditated and deliberate murder. He had bought this handgun, a very powerful handgun, three weeks prior to the shooting. There'd been this ongoing, bitter dispute over the property. He repeatedly beat Mr. Hall about the head and face. He even was beating him after Mr. Hall was on the ground, as is evidenced by the dirt that was embedded in the gun that the police found. He burned the body. He tried to hide evidence. He lied about what was happening. Everything points to premeditation and deliberation here. And that is what we maintain the jury was deliberating over all that time. And that his counsel, defense counsel, did him great service in avoiding that first-degree murder conviction. Okay? And I'd also like to point out that the appellant argues that the only issue here was whether he was well, actually, I'll just submit at this point if you have no further questions. Okay. Thank you for your argument. I have a question for you. Yes, sir. The initial aggressor doctrine says if you're the initial aggressor, you can't claim self-defense. If it's wrongful. Yeah. At the point where Stevens now realizes Hall was not armed and is still alive and proceeds to hit him with the gun, doesn't that dissipate at that point? Well, if it was perfect self-defense, I think the answer is yes. And that, I suppose, is one of the first points I want to make here is that my colleague from the attorney general's office has focused on many of the awful facts of this case, talking about how it was premeditated, the burning of the body. And I concur heartily. And he says there is no plausible argument that this was reasonable. That's a quote. And I agree with him. There is no plausible argument that this was reasonable. That's why it's imperfect self-defense. That's why the trial court, as a matter of state law, found that there was sufficient evidence of imperfect self-defense. So lest there be any disagreement or confusion, I'm not arguing for perfect self-defense here. The vice in what happened here, the combination of things, went to imperfect self-defense. Let's suppose that the initial confrontation did not occur, that what happened was they saw each other, exchanged some words, your client went at Hall, realizing he wasn't armed, and beat him to death with a gun. Would Hall's gun ownership be relevant? I don't think it would. If at no point my client said I thought I began this assault, this awful series of events, because I thought he was pointing a gun at me, it would be irrelevant. It's irrelevant precisely because he testified to it, therefore putting his credibility at issue and then the original aggressor doctrine. He just had the thermos. He had the confrontation. He thinks it's a gun, goes after Hall.  That's what happened, isn't he? He threw the thermos. Well, throws it or hits him in the face with it. And at that point he realizes Hall's not armed and beats him to death with a gun. Which is exactly what makes it unreasonable. But it's certainly sufficient under State law for the jury to have heard that, and the testimony the trial counsel failed to present precluded that because of the gatekeeping function of the original aggressor doctrine. My time is up. The Court has been most gracious. Let me just add one point. Your Honor mentioned that often in trial, witnesses forget things on direct exam. It happens to the best. I just want to point out it all happens on appellate arguments. Also, some of the best arguments I've ever made are in the car on the way home. I hope that isn't the case today, but I thank the Court for its patience. Thank you both for your arguments. The case just argued will be submitted for decision.
judges: Hawkins, Tashima, Thomas